OPINION
Defendant-appellant [hereinafter appellant] Roy R. Enyart, Jr. appeals his conviction and sentence by the Fairfield County Court of Common Pleas on one count of involuntary manslaughter, in violation of R.C. 2903.04. The appellee is the State of Ohio.
 STATEMENT OF THE FACTS AND CASE
At approximately 2:00 A.M., on December 28, 1997, appellant was involved in an automobile accident in which appellant was the driver of a 1994 Ford Explorer. In addition to appellant, the vehicle was occupied by Julie Roberts, Robert Vance, John Bryant and Kendra Prince. Appellant was driving on Diley Road, in Fairfield County. Appellant was speeding and/or street racing. In so doing, appellant drove on the left side of the road (the passing lane) and while attempting to return to the right lane, lost control of his vehicle and drove off the roadway. This caused the vehicle to become airborne. The Ford Explorer rolled an undetermined number of times and resulted in the death of Julie Roberts. A second vehicle operated by Eric Roberts was in close proximity to appellant's vehicle immediately prior to the accident and may have had some involvement with the accident. However, the record contains no evidence as to how Eric Roberts' vehicle may have been involved. Appellant was life flighted from the scene. Upon arriving at the hospital, blood was obtained from appellant for medical purposes. Tests conducted by the hospital showed a blood alcohol level of .181. However, because the hospital had a policy of discarding blood spcimens seven days after the specimen was obtained, appellant's blood specimen was discarded, pursuant to that policy, within seven days. As a result of the accident, appellant sustained serious head and back injuries, resulting in complete paralysis from the waist down. The 1994 Ford Explorer was totaled, disposed of and no longer available for inspection as of February 5, 1998, (approximately 39 days after the accident). Testimony showed that this was not the first accident in which the 1994 Ford Explorer had been involved. In September, 1997, the Explorer was involved in a minor accident which resulted in breakage of the left front axle and tire damage. The vehicle was repaired using "State Farm Insurance Co. Quality Recycled Parts." Appellant believed that the vehicle did not drive the same after the repairs. Sergeant Darnell Robson of the Pickerington Police Department investigated the accident. Sergeant Robson testified that his investigation showed that the accident was caused by appellant's speeding, driving left of center, possibly drag racing with another vehicle and the appellant's consumption of alcohol. Sergeant Robson testified that part of the road where the accident happened had been repaved after the accident, sometime in the summer of 1998. Subsequently, on October 29, 1998, appellant was subjected to questioning during a deposition in a civil wrongful death suit which was filed against him as a result of Ms. Roberts' death. Appellant claimed that prior to any questioning, he was not advised that anything he said during the deposition could be used against him at a criminal trial. Appellant was indicted on February 26, 1999, approximately 14 months after the accident. The indictment charged appellant with one count of involuntary manslaughter, a felony of the third degree, in violation of R.C. 2903.04 and one count of aggravated vehicular homicide, a felony of the third degree, in violation of R.C.2903.06. Both counts in the indictment alleged that appellant was under the influence of alcohol at the time of the offense. At the arraignment, appellant pled not guilty to both charges. On April 22, 1999, appellant filed a Motion to Dismiss the Indictment, claiming that the State, through an unreasonable pre-indictment delay, had violated appellant's rights to due process of law under Section 16, Article I, of the Ohio Constitution and the Fifth and Fourteenth Amendments to the United States Constitution. An oral hearing was held on appellant's Motion to Dismiss on June 18, 1999. On July 27, 1999, the trial court overruled appellant's Motion to Dismiss. Thereafter, on March 13, 2000, appellant entered a plea of no contest to an amended charge of involuntary manslaughter, without the DUI specification. The remaining charges were dismissed by the trial court upon a motion of the State. A sentencing hearing was held on April 17, 2000. Appellant was sentenced to three years actual incarceration, fined $1,000.00, assessed the costs of the case, and was ordered to pay restitution for hospital bills, funeral bills and loss of jewelry to the family of the deceased victim. The trial court suspended the execution of sentence pending appeal. Appellant appeals from his conviction and sentence and herein, raising the following assignments of error:
 I. THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO DISMISS HIS INDICTMENT BASED ON THE STATE'S VIOLATION OF DEFENDANT'S RIGHT OF DUE PROCESS OF LAW UNDER SECTION 16, ARTICLE I, OF THE OHIO CONSTITUTION, AND THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
II. THE TRIAL COURT ERRED IN SENTENCING DEFENDANT.
 I
In appellant's first assignment of error, appellant argues that his due process rights, pursuant to Article I, Section 16 of the Ohio Constitution and the Fifth and Fourteenth Amendments of the United States Constitution, were violated by a fourteen month pre-indictment, pre-accusation delay. We disagree. Initially, we note that statutes of limitations, which provide predictable, legislatively enacted limits on prosecutorial delay, provide "`the primary guarantee, against bringing overly stale criminal charges.'" United States v. Marion (1971),404 U.S. 307, 322, 92 S.Ct. 455, 464, 30 L.Ed.2d 468 (quoting United States v. Ewell (1966), 383 U.S. 116, 122, 86 S.Ct. 773, 777,15 L.Ed.2d 627). However, the "statute of limitations does not fully define a defendant's rights with respect to events occurring prior to indictment." Marion, 404 U.S. at 324. The Due Process Clause has a limited role to play in protecting against oppressive pre-indictment delay. U.S. v. Lovasco (1977), 431 U.S. 783, 97 S.Ct. 2044, 52 L.Ed.2d 752. In U.S. v. Lovasco, supra, the United States Supreme Court set forth a two-part test to determine if a pre-indictment delay constituted a due process violation. Under the Lovasco analysis, a defendant has the burden of establishing that the delay resulted in actual prejudice to the defendant. Once the defendant has established actual prejudice, the burden shifts to the State to justify the delay. State v. Whitting (1998), 84 Ohio St.3d 215. When reviewing a trial court's decision regarding a motion to dismiss an indictment based upon a pre-indictment delay, a reviewing court must accord due deference to the trial court's findings of fact, but may freely review the trial court's application of the law to the facts. State v. Cochenour (March 8, 1999), Ross App. No. 98CA2440, unreported (citing State v. Metz (Apr. 21, 1998), Washington App. No. 96CA48, unreported). It is under this standard of review that we consider appellant's assignment of error. To succeed, the defendant must establish actual prejudice, i.e., prejudice may not be presumed from the passing of time. See Metz, supra, (citing United States v. Crouch (C.A.5, 1996), 84 F.3d 1497, 1514-15). A general assertion that a defendant cannot remember the events of the alleged crime has been held to be insufficient to demonstrate actual prejudice. Metz, supra; State v. Glasper (Feb. 2, 1997), Montgomery App. No. 15740, unreported. As the court noted in State v. Flickinger (Jan. 19, 1999), Athens App. No. 98CA09, unreported: [T]he federal courts of appeal appear to agree that a defendant must provide concrete proof that he will suffer actual prejudice at trial as a result of the government's delay in indicting the defendant. See, e.g., Crouch, 84 F.3d at 1515 (stating that vague assertions of faded memories are insufficient to establish actual prejudice; the defendant must state which witness is unable to fully recount the details of the crime and how the witness's lapsed memory will prejudice the defense); United States v. Beszborn (C.A.5, 1994), 21 F.3d 62,67, certiorari denied sub nom; Westmoreland v. United States, 513 U.S. 934,115 S.Ct. 330, 130 L.Ed.2d 288 (stating that vague assertions of faded memories are insufficient to establish actual prejudice); United States v. Stierwalt (C.A.8, 1994), 16 F.3d 282, 285 (stating that assertions of faded memories are insufficient to establish actual prejudice when the defendant fails to specify how witness's lapsed memory will harm his defense); United States v. Harrison (S.D.N.Y. 1991), 764 F. Supp. 29, 32
(stating that assertion of faded memories is insufficient to establish actual prejudice); United States v. Greer (D.Vt. 1997), 956 F. Supp. 525,528 (stating that a defendant must present concrete proof of actual prejudice and not mere speculation of actual prejudice).
The defendant must also show that the actual prejudice was caused by the delay. Appellant contends that he met his burden to show that actual prejudice was caused by the State's fourteen month delay in indictment. In his Merit Brief, appellant argues that he suffered actual prejudice in the following ways: A. Unavailability of vehicles: Appellant argues that he was prevented from performing inspections or testing of the motor vehicles involved in the accident to determine the actual cause of the accident. Appellant presented no evidence as how the other vehicle may have been involved. Likewise, appellant failed to present any evidence to support his conjecture that a mechanical problem may have caused the accident. While evidence and stipulations entered at the hearing demonstrated that another vehicle "may have been involved" and that appellant's car had been repaired prior to the accident, appellant presented no concrete evidence that these factors were materially involved in the accident. B. Diley Road Appellant alleges that he was prejudiced because the portion of Diley Road on which the accident occurred was re-paved after the accident. Due to these modifications, appellant asserts that he was prevented from hiring an expert to conduct an accident reconstruction. Sergeant Darrell Robson, of the Pikerington Police Department confirmed that the surface of southbound lane of the road was re-paved sometime in the summer of 1998. However, Sergeant Robson testified that the general conditions of the road were the same at the time of the hearing as at the time of the accident. Other than the re-paving, no changes were made to the road dimensions. Further, appellant presented no evidence as to how the surface of the road may have had an impact on the events which lead to the accident. We find appellant's arguments to be speculative and to lack proof of actual prejudice. C. Blood/Serum Tests Appellant alleges that he suffered prejudice because he was prevented from performing independent testing of his blood/serum which was obtained by the hospital on the date of the accident. By stipulation, the State agreed that appellant's blood/serum specimen was disposed of seven days after it was drawn, pursuant to hospital policy. First, appellant has made no showing that an independent test would have resulted in a significantly different outcome. Further, we cannot find that the inability to perform an independent test was caused by the State's delay in bringing the indictment. It would be unreasonable to require the State to bring an indictment in less than seven days after such an accident. Therefore, we find no showing of actual prejudice, caused by the State's unreasonable delay in bringing an indictment. D. Civil Deposition Appellant argues that he was prevented from exercising his right to remain silent at any subsequent criminal trial when he testified at a civil deposition regarding the accident without first being made aware of his Fifth Amendment right to remain silent. First we note that, at the hearing on his Motion to Dismiss, appellant testified that he has no memory of what happened from after 3:00 P.M. the afternoon before the accident until after the accident. Second, there is no evidence in the record as to what appellant testified to at the deposition. Since appellant testified that he has no memory of the events leading up to the accident and appellant failed to present the transcript or even a summary of any prejudicial testimony he may have given at the deposition, this court finds no showing of actual prejudice. E. Faded Memories Appellant contends that he was denied the ability to present an effective defense due to the inability of witnesses to remember specific details of the accident and the events leading up to the accident. Appellant claims that "the passage of time has affected [the witnesses] ability to recall specific details of the automobile accident and [appellant's] alcohol consumption". Appellant's Merit Brief. However, appellant cites this court to no specific testimony of any witness which supports his argument. However, we find we need not address each witness' testimony individually. At the hearing, appellant failed to present any evidence as to what these witnesses could have testified to had the delay not occurred. As noted previously, a general assertion that a party cannot remember the events of the alleged crime has been held to be insufficient to demonstrate actual prejudice. Metz, supra; State v. Glasper (Feb. 2, 1997), Montgomery App. No. 15740, unreported. Assertions of faded memories are insufficient to establish actual prejudice if the defendant fails to specify how the witness' lapsed memory will harm his defense. United States v. Stierwalt (C.A.8, 1994), 16 F.3d 282, 285. Therefore, we find appellant has failed to show actual prejudice. F. Unavailability of Witness Appellant asserts that he is unable to present an alternative theory of the accident at trial because of the delay in indictment. Appellant claims that in order to present such a theory, he requires the testimony of a "key witness," Eric Roberts. Appellant argues that the testimony showed that Roberts moved to Chicago, Illinois, in the early part of June, 1999, and is not subject to subpoena power. For the following reasons, we find that appellant's argument fails. Again we note that appellant has failed to present any evidence as to what this witness could have testified to in aid of the defense. Further, as noted by the trial court, Roberts is subject to subpoena power, pursuant to R.C. 2939.25 through 2939.29. Lastly, we note that there is no evidence that Roberts is unwilling to return upon being subpoenaed or that he will not be able to be found to be served. Robert's father testified that he knew of no reason why his son would not return to testify and that he could provide his son's address and phone number. Again, appellant has failed to show actual prejudice. In conclusion, we find that appellant has failed to show actual prejudice which was caused by the State's pre-indictment delay. Therefore, the burden was not shifted to the State to require the State to show that the pre-indictment delay was reasonable. Therefore, this court shall not address the second prong of the Lovasco analysis, i.e. the reasonableness of the delay. Appellant also argues that the trial court erred when it stated in its Judgment Entry that "[f]or the Defendant to be successful, the Defendant must establish actual prejudice was done to the Defendant by an act of the State." (Emphasis added.) First, we note that in the introductory portion of the Judgment Entry, the trial court accurately states the law as established in Marion, supra, Lovasco, supra and Whiting, supra, to wit: "[t]he Defendant has a burden of producing evidence demonstrating that the pre-indictment delay [inaction by State] has caused actual prejudice to his defense." Second, we find, based upon our analysis above, that even if we assume arguendo that the trial court erroneously or inartfully re-stated the law in its analysis, the trial court correctly found that appellant failed to demonstrate that the State's delay in indictment caused actual prejudice to appellant's defense. We find any such error is harmless. Appellant's first assignment of error is overruled. II In the second assignment of error, appellant argues that the trial court's sentence of three years incarceration and restitution was an abuse of discretion and contrary to law. Defendant was convicted of one count of involuntary manslaughter, a felony of the third degree. Appellant was sentenced to three years of actual incarceration and ordered to pay restitution to the victim's family for the hospital bills, funeral bills and loss of jewelry. A. Incarceration For third degree felony convictions, R.C. 2929.13(C) provides that there is no presumption in favor of or against the imposition of a prison sentence. In determining a sentence for a third degree felony, the trial court is to comply with the purposes and principles of sentencing as stated in R.C. 2929.11 and consider the seriousness and recidivism factors delineated in R.C. 2929.12. Once a trial court determines that a term of incarceration is necessary, the court may impose a sentence of 1, 2, 3, 4 or 5 years of actual incarceration. However, when a trial court imposes a prison sentence upon an offender who has not served a prison term previously, the trial court is to impose the shortest prison term authorized for the offense unless the court finds on the record that "the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crimes by the offender or others." R.C. 2929.14(B). Revised Code 2953.08 directs this court to modify or vacate a sentence if we clearly and convincingly, find, inter alia, that the record does not support the sentence or if it is contrary to law. The statute directs us to review the record, including pre-sentence reports, the trial record, the record of the sentencing hearing, and any written findings the trial court may have made. It is pursuant to this standard of review that we consider appellant's assignment of error. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and to punish the offender. R.C. 2929.11. The following factors are to be considered in determining the seriousness and likelihood of recidivism: (B) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is more serious than conduct normally constituting the offense: (1) The physical or mental injury suffered by the victim of the offense due to the conduct of the offender was exacerbated because of the physical or mental condition or age of the victim. (2) The victim of the offense suffered serious physical, psychological, or economic harm as a result of the offense. (3) The offender held a public office or position of trust in the community, and the offense related to that office or position. (4) The offender's occupation, elected office, or profession obliged the offender to prevent the offense or bring others committing it to justice. (5) The offender's professional reputation or occupation, elected office, or profession was used to facilitate the offense or is likely to influence the future conduct of others. (6) The offender's relationship with the victim facilitated the offense. (7) The offender committed the offense for hire or as a part of an organized criminal activity. (8) In committing the offense, the offender was motivated by prejudice based on race, ethnic background, gender, sexual orientation, or religion. (9) If the offense is a violation of section 2919.25 or a violation of section 2903.11, 2903.12, or 2903.13 of the Revised Code involving a person who was a family or household member at the time of the violation, the offender committed the offense in the vicinity of one or more children who are not victims of the offense, and the offender or the victim of the offense is a parent, guardian, custodian, or person in loco parentis of one or more of those children.
(C) The sentencing court shall consider all of the following that apply regarding the offender, the offense, or the victim, and any other relevant factors, as indicating that the offender's conduct is less serious than conduct normally constituting the offense: (1) The victim induced or facilitated the offense. (2) In committing the offense, the offender acted under strong provocation. (3) In committing the offense, the offender did not cause or expect to cause physical harm to any person or property. (4) There are substantial grounds to mitigate the offender's conduct, although the grounds are not enough to constitute a defense.
(D) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is likely to commit future crimes: (1) At the time of committing the offense, the offender was under release from confinement before trial or sentencing, under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or under post-release control pursuant to section 2967.28 or any other provision of the Revised Code for an earlier offense. (2) The offender previously was adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has a history of criminal convictions. (3) The offender has not been rehabilitated to a satisfactory degree after previously being adjudicated a delinquent child pursuant to Chapter 2151. of the Revised Code, or the offender has not responded favorably to sanctions previously imposed for criminal convictions. (4) The offender has demonstrated a pattern of drug or alcohol abuse that is related to the offense, and the offender refuses to acknowledge that the offender has demonstrated that pattern, or the offender refuses treatment for the drug or alcohol abuse. (5) The offender shows no genuine remorse for the offense.
(E) The sentencing court shall consider all of the following that apply regarding the offender, and any other relevant factors, as factors indicating that the offender is not likely to commit future crimes: (1) Prior to committing the offense, the offender had not been adjudicated a delinquent child. (2) Prior to committing the offense, the offender had not been convicted of or pleaded guilty to a criminal offense. (3) Prior to committing the offense, the offender had led a law-abiding life for a significant number of years. (4) The offense was committed under circumstances not likely to recur. (5) The offender shows genuine remorse for the offense. R.C. 2929.12
Specifically, appellant claims that the trial court failed to properly weigh the factors presented in R.C. 2929.12(B), (C), (D) (E). Appellant argues that the trial court conceded that appellant was highly unlikely to commit this crime in the future, that appellant did not expect to cause physical harm to anyone, that there are substantial grounds to mitigate appellant's conduct, that appellant has no prior record and that appellant is extremely remorseful. Appellant submits that he has been punished enough. The trial court's Judgment Entry stated the following, in relevant part: The Court has considered the record, oral statements, any victim impact statements, and presentence report prepared, as well as the principles and purposes of sentencing under Ohio Revised Code [Sec.]2929.11, and has balanced the seriousness and recidivism factors of Ohio Revised Code [Sec.] 2929.12. . . . For the reasons stated on the record, and after consideration of the factors under Revised Code [Sec.]2929.12, the Court also finds that prison is consistent with the purposes of Revised Code [Sec.] 2929.11 and the Defendant is not amenable to an available community control sanction. Specifically, the Court finds:
1. The parents and family of Julie Roberts have suffered serious psychological and economic harm as a result of the offense. [Sec.]2929.12(B)92). 2. The victim, Julie Roberts, died, thereby suffering serious physical harm. [Sec.] 2929.12(B)(2). 3. The Defendant's professional reputation is likely to influence the future conduct of others. [Sec.] 2929.12(B)(5). 4. The Defendant's friendship with Julie Roberts facilitated the offense as she probably trusted him based on prior behavior. [Sec.] 2929.12(B)(6).
It is further submitted that none of the factors under [Sec.]2929.12(C) apply to characteristics [sic] this offense as less serious.
The trial court provided additional insight into its consideration of the factors of R.C. 2929.12 during the sentencing hearing: The overriding guideline under the sentencing code is — the overriding purpose is to punish offenders and protect the public from future crime. And there's a list of factors that you go through, which has been outlined by counsel. And under 2929.12(B), there's what we call more serious factors. And in this particular case, obviously, the serious factor in this case was that the victim, Julie Roberts, died. Obviously, she suffered serious physical harm, and that this act caused serious psychological damage to the members of her family. There's just no question about that. So the Court would make that finding of a more serious factor. The Court doesn't find that there's any recidivism likely in this case because the Defendant has no previous criminal record and it's not likely that this offense would be committed again. . . . Felonies of the third degree, which we have there, are in the middle, in which the law does not provide for a presumption one way or the other. So the Court has to look at these other factors in this case. . . . So the point the Court is making is, the Court feels the sole and proximate cause of this accident was somewhat speed, but primarily the intoxication of the Defendant, which caused him to lose his ability to operate the car and, therefore, wrecked the car and causing the death of Julie Roberts in this particular case. . . . [I]t's true that probably the Court cannot impose any more severe punishment on the Defendant than he's already received in one way, because he's a paraplegic for life. And certainly, in some ways, that's worse than any jail term. . . . I think the Defendant's main argument here in favor of probation is basically he's kind of saying, "Well, there was a real serious result here resulting in a death, and yes, he was drinking and all that, but Judge, you shouldn't impose any additional punishment because he's been punished because he's in a wheelchair." . . . The problem with that argument, as Mr. Marx points out correctly, is that that injury was caused by the Defendant's act and that punishment was a result of that in the sense of physical injury, but that is not any punishment inflicted by the State or by the law. He suffered that by the act and there's no punishment by the law for that. The bottom line here is, . . . we have a severe result here. We have the death of a human being, the most severe thing you can do. And it was the result of the Defendant's act of driving having consumed too much alcohol resulting in her death. And there has to be a punishment for that under the law. There's other punishments, of course, moral and religious and so forth, but under the law.
Transcript of Proceedings 46 — 53.
It is apparent that the trial court considered the factors enumerated in R.C. 2929.12. The trial court reviewed the factors and the arguments of counsel and concluded that a term of incarceration was appropriate. While appellant may not agree with the trial court's conclusion, this court finds that the trial court considered the factors of R.C. 2929.12
and that the sentence of three years incarceration is not clearly and convincingly contrary to law. Further, appellant argues that the trial court failed to consider the statutory guidance of R.C. 2929.13(A), which states that a sentence "shall not impose an unnecessary burden on state or local government resources". Appellant submits that because he is paralyzed from the waist down for the remainder of his life, thereby requiring extraordinary medical care, the trial court erred in sentencing appellant to actual incarceration. Appellant cites this court to no precedent in support of his argument. While we understand that appellant's confinement to a wheelchair may increase the cost of incarceration, we cannot find that appellant's sentence of three years actual incarceration for one count of involuntary manslaughter pursuant to the circumstances of the offense, constitutes an unnecessary burden upon government, pursuant to R.C. 2929.13(A). Appellant further submits that the trial court failed to make the requisite findings, pursuant to R.C. 2929.14(B), in order to sentence a first offender to more than the minimum sentence. To impose such a sentence, R.C. 2929.14(B) requires: [I]f the court imposing a sentence upon an offender for a felony elects or is required to impose a prison term on the offender and if the offender previously has not served a prison term, the court shall impose the shortest prison term authorized for the offense . . . unless the court finds on the record that the shortest prison term will demean the seriousness of the offender's conduct or will not adequately protect the public from future crime by the offender or others.
The record reflects that the trial court made the requisite findings. At the sentence hearing, the trial court found: And on that basis, the Court would find that the minimal sentence, even though this is a first time offense, of the shortest term would demean the seriousness of the offense and not adequately protect the public due to the circumstances resulting in the death of an individual.
Since the trial court made the required finding, we find appellant's arguments meritless. B. Restitution Lastly, appellant argues that the trial court's order that appellant must pay restitution for the victim's hospital bills, funeral bills, and loss of jewelry to the family of the victim was contrary to law. Appellant argues that the record does not contain sufficient evidence "from which the trial court could ascertain the amount of restitution to a reasonable degree of certainty and failed to establish the amount of the restitution at the time it was ordered." We disagree. A trial court is authorized to order restitution by an offender to a victim or any survivor of the victim, in amount based upon the victim's economic loss. R.C. 2929.18(A)(1). The trial court is to determine the amount of restitution at the sentencing hearing. Id. At the sentencing hearing, the trial court made the following Order: So the Court . . . would order restitution in the amount for the hospital bills that weren't reimbursed and the funeral bills and the loss of [jewelry] that were listed in a previous sheet administered to the Court." TR 52-53.
The record contains a victim impact report, completed by the victim's parents which identified the hospital bills, funeral bills and lost jewelry as identified by the trial court. The victim impact report identified the cost of the items and included receipts for the hospital bills listed and the funeral expenses. The preferred practice would be to set forth a specific sum of restitution to be paid. However, we find that the trial court's reference to the list of items and the fact that the documentation is in the record for our review to be sufficient to meet the requirements of R.C. 2929.18(A)(1). Cf. State v. Riggs (June 13, 1991), Meigs App. No. 454, unreported.
Appellant's second assignment of error is overruled. The Judgment of the Fairfield County Court of Common Pleas is affirmed.
 _____________ Edwards, P.J.
Farmer, J. and Wise, J. concurs.