UNITED STATES of America, Appellee,

v.

Melvin E. STIERWALT, Appellant.

No. 93–2512.

United States Court of Appeals,
Eighth Circuit.

Submitted Nov. 12, 1993.

Decided Feb. 9, 1994.

Counsel who presented argument on behalf of the appellee was E. Eugene Harrison, Assistant U.S. Attorney, of Kansas City, Missouri. Appearing on the brief were Marietta Parker, U.S. Attorney and D. Michael Green.

Before JOHN R. GIBSON,* BOWMAN, and HANSEN, Circuit Judges.

BOWMAN, Circuit. Judge.

Melvin E. Stierwalt was convicted in the District Court of possession of cocaine with intent to distribute, conspiracy to distribute cocaine, and use of a firearm during and in relation to a drug-trafficking offense. He was sentenced to two concurrent thirty-month terms of imprisonment on the drug counts, and a mandatory sixty-month consecutive term on the firearms count, to be followed by three years of supervised release. Stierwalt appeals. We find no merit in any of the eight issues raised and affirm the judgment of the District Court.

In January 1991, a confidential informant began working for the Jackson County, Missouri, Drug Task Force in exchange for immunity from prosecution on certain drug charges. On February 6, 1991, the informant talked by telephone with James Mishler who agreed to sell the informant one ounce of cocaine. Mishler told the informant he would have to go to Olathe, Kansas,[1] to get the cocaine. Mishler did not show up at the appointed time and place, and later that evening told the informant that his supplier did not have any cocaine but probably would by Friday, February 8. On Friday, the informant and Mishler, by telephone, arranged for the informant to purchase four ounces of cocaine, and Mishler again said he had to go to Olathe before meeting with the informant to complete the deal. They agreed to meet that night in the parking lot of a restaurant in Kansas City, Missouri.

The informant arrived at the restaurant with Detective Ken Bergman of the Jackson County Drug Task Force. Bergman was

---

Counsel who presented argument on behalf of the appellant was R. Bruce Kips, of Fairway, Kansas.

* The Honorable John R. Gibson took senior status on January 1, 1994.

1. Olathe, Kansas, is a short distance south and across the Missouri–Kansas state line from the location in Kansas City, Missouri, where the drug transaction was to take place. Stierwalt's driver's license, showing residence in Olathe, Kansas, was admitted into evidence at trial.

driving a Ford Explorer and the informant was a passenger in the vehicle. Bergman backed the Explorer into a parking space. A four-door Dodge Omni pulled into an adjacent parking space. A woman was driving the Omni, Stierwalt was in the front passenger seat, and Mishler was in the back. The informant got into the back of the Omni on the passenger side, and was sitting behind Stierwalt.

During the attempted cocaine purchase, Stierwalt passed a zip lock bag containing a chunk of white powder to Mishler in the back seat. The informant asked for and received a small sample, and returned to the Explorer with it. At that time Bergman alerted marked police cars to converge on the parking lot. When the Omni attempted to leave, Bergman moved the Explorer to block the car's exit. Mishler and the driver attempted to flee on foot, but they were apprehended by the officers at the scene. Stierwalt threw the zip lock bag containing the white substance, later determined to be cocaine, out the open back door of the Omni into the parking lot. A loaded firearm was recovered from the floorboard of the front passenger seat. Stierwalt was arrested.

Stierwalt first argues that the District Court erred in denying his pre-trial motion to dismiss. He claims he was denied his right to a speedy trial, as the offenses with which he was charged occurred on or about February 8, 1991, but no indictment was issued until June 22, 1992. He contends that the delay was unreasonable and that his defense was prejudiced because he was unable to locate possible witnesses to the drug transaction.

Judging from their briefs and from oral argument, both Stierwalt and the government appear to be confused as to the constitutional basis for Stierwalt's claim. Both parties make their arguments based on the Sixth Amendment right to a speedy trial, and a portion of the District Court's order denying the motion for dismissal also addresses Stierwalt's Sixth Amendment right.[2] It is

apparent to us, however, as discussed below, that there could be no Sixth Amendment violation here, and that Stierwalt's only cognizable claim must be an alleged violation of his Fifth Amendment right to due process.

■ "[T]he Sixth Amendment speedy trial provision has no application until the putative defendant in some way becomes an 'accused'. . . ." *United States v. Marion,* 404 U.S. 307, 313, 92 S.Ct. 455, 459, 30 L.Ed.2d 468 (1971). The chief purpose of the Sixth Amendment speedy trial guarantee is not to protect the defendant from prejudice to his defense as a result of delay. *United States v. MacDonald,* 456 U.S. 1, 8, 102 S.Ct. 1497, 1502, 71 L.Ed.2d 696 (1982). Instead, Sixth Amendment protection "is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." *Id.* Although "the actual restraints imposed by arrest and holding to answer a criminal charge" will trigger Sixth Amendment speedy trial concerns, *Marion,* 404 U.S. at 320, 92 S.Ct. at 463, and Stierwalt in fact was arrested on February 8, 1991, he admits that he was released without being charged and "was not required to post bond, nor was he given a court date to appear and answer to any charges." Appellant's Brief at 14. Therefore, we hold that Stierwalt's Sixth Amendment right to a speedy trial was not implicated by the preindictment delay.

■ Stierwalt's right to a prompt indictment is protected by the appropriate statute of limitations and by the Due Process Clause of the Fifth Amendment. *See Marion,* 404 U.S. at 322, 324, 92 S.Ct. at 464, 465; *cf. MacDonald,* 456 U.S. at 7, 102 S.Ct. at 1501 ("Any undue delay after charges are dismissed, like any delay before charges are filed, must be scrutinized under the Due Process Clause, not the Speedy Trial Clause."). Although the parties' arguments and the order appealed from focus primarily

2. The Report and Recommendation of the Honorable John T. Maughmer, Chief United States Magistrate Judge for the Western District of Missouri, which was adopted by the District Court, specifically says no Sixth Amendment issue is involved and resolves the issue using a due process analysis.

on the Sixth Amendment, the record before us is adequate for us independently to decide the question whether Stierwalt's due process right was violated, as the due process analysis parallels the Sixth Amendment analysis in the relevant respects.

■ There is no dispute that Stierwalt was indicted well within the five-year statute of limitations applicable to the crimes charged. *See* 18 U.S.C. § 3282 (1988). Nevertheless, due process would have required the District Court to dismiss the indictment if Stierwalt demonstrated "that the pre-indictment delay in this case caused substantial prejudice to [his] rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused." *Marion*, 404 U.S. at 324, 92 S.Ct. at 465.

■ The District Court concluded, in its Sixth Amendment analysis, that the preindictment delay did not result in prejudice, much less "substantial" prejudice to Stierwalt's defense. We agree. Stierwalt claims that, as a result of the delay, he lost the benefit of the testimony and knowledge of a waitress who was working in the restaurant the night of February 8, 1991. By the time counsel interviewed her, the waitress could not remember what, if anything, she saw from the restaurant window that night, and could not identify potential witnesses who were in the restaurant on February 8, 1991. We think it is broad speculation to suggest that, if interviewed earlier, she would have remembered anything that would be exculpatory to Stierwalt, much less that she could have identified anyone else who had exculpatory testimony. Even assuming such evidence would have been adduced, it is unlikely that the testimony of witnesses some distance away from the transaction, watching from a window at night and in the dark, would have successfully refuted the testimony of two eyewitnesses to the entire drug deal who were much closer to the action. Moreover, Stierwalt acknowledged that he had available to him a third eyewitness, the driver of the Omni, who happened to be Stierwalt's girlfriend.

■ Stierwalt also claims he was deprived of co-defendant Mishler's testimony because Mishler vanished after being released in February 1991.[3] Even assuming that Mishler would have testified on Stierwalt's behalf—also a wholly speculative assumption—Stierwalt acknowledges that Mishler disappeared immediately after the 1991 incident. Any testimony he might have given would have been lost regardless of the preindictment delay.

■ Even assuming Stierwalt had established prejudice to his defense, and we hold that he did not, "*Marion* makes clear that proof of prejudice is generally a necessary but not sufficient element of a due process claim, and that the due process inquiry must consider the reasons for the delay as well as the prejudice to the accused." *United States v. Lovasco*, 431 U.S. 783, 790, 97 S.Ct. 2044, 2048–49, 52 L.Ed.2d 752 (1977). Unless there is a showing that the government intentionally delayed indictment to harass or to gain a tactical advantage, there can be no due process violation. *United States v. Scoggins*, 992 F.2d 164, 166–67 (8th Cir.1993).

The government asserts that at least half of the preindictment delay resulted from the need to protect the confidential informant and the undercover agent, who were involved in other investigations in the months following Stierwalt's 1991 arrest. Stierwalt challenges the reasonableness of that excuse, but he makes no suggestion that the government was anything more than negligent in delaying indictment. That is, there is no intimation that the preindictment delay was intentional and designed to gain a tactical advantage over or to harass Stierwalt.

We hold that the District Court did not err in denying Stierwalt's motion to dismiss.

■ Stierwalt also challenges the fairness of his trial on the ground that jurors were permitted to ask "nonclarifying" questions of the witnesses. There are two such questions whose answers, Stierwalt argues, prejudiced his right to a fair trial. A juror wanted to know from the informant what time he completed plans with Mishler for the drug deal

---

**3.** Although Mishler was charged with Stierwalt, he disappeared after February 8, 1991. According- ing to the parties he has not been located, and therefore he has not been tried.

the night of February 8. The informant answered that the calls were completed no later than 8:00 p.m. Another juror inquired of Bergman whether he stayed behind the steering wheel of the Explorer during the time before the Omni tried to drive away. The answer was yes.

The juror questions were submitted in writing to the District Court, and evidentiary issues were resolved before the judge read the questions to the witnesses. Stierwalt does not contend, and we do not find, that the procedure the District Court employed in permitting the jurors to ask questions was not in keeping with the directives of this Court. *See United States v. George*, 986 F.2d 1176, 1178–79 (8th Cir.), *cert. denied*, —— U.S. ——, 114 S.Ct. 269, 126 L.Ed.2d 220 (1993). His only complaint is that the questions were not aimed at clarifying the evidence, but instead directly aided the prosecution. We disagree.

These questions did not elicit new evidence, but filled in innocuous details of testimony already before the court. Stierwalt's attempts to construe them as something else are imaginative but unavailing. Moreover, Stierwalt has not directed our attention to any case in this Circuit or elsewhere where "nonclarifying" juror questions have been held to violate a defendant's right to a fair trial. As far as we know, there is no requirement that juror questions be merely "clarifying," and we decline Stierwalt's invitation to impose such a requirement. We hold that the District Court did not err in permitting these juror questions.

 Stierwalt also contends that the District Court erred in two of its evidentiary rulings. We hold that the court did not abuse the considerable discretion it enjoys in ruling on evidentiary matters in either decision challenged here. *See United States v. Casas*, 999 F.2d 1225, 1229 (8th Cir.1993), *cert. denied*, —— U.S. ——, 114 S.Ct. 894, 127 L.Ed.2d 86 (1994).

 First, Stierwalt claims that Mishler's out-of-court statements, testified to by the informant, that Mishler had to go to Olathe before completing the proposed drug deals were inadmissible hearsay. The Federal Rules of Evidence, however, provide that such a statement, offered against a party, is not hearsay if it is made by a coconspirator during and in furtherance of the conspiracy. Fed.R.Evid. 801(d)(2)(E); *see also Bourjaily v. United States*, 483 U.S. 171, 180–81, 107 S.Ct. 2775, 2781–82, 97 L.Ed.2d 144 (1987). The evidence shows that Mishler was joined with Stierwalt in a conspiracy to distribute cocaine, as charged in the indictment. The District Court therefore did not abuse its discretion in allowing the informant to testify to Mishler's statements.

 Second, Stierwalt challenges the court's refusal to receive into evidence a photograph taken a few days before trial in the restaurant parking lot where the attempted drug transaction took place. The photograph was taken at night from a Ford Explorer looking down into a Dodge Omni, the vehicles parked side-by-side but facing opposite directions. The photographer spoke to no one who was present the night of the incident, and no witness testified that the photograph was an accurate representation of the view from the Explorer into the Omni when the drug deal took place. In these circumstances, the District Court did not abuse its discretion in ruling that the photograph had an inadequate foundation to be received into evidence.

Stierwalt makes three challenges to the instructions. These challenges are totally without merit and do not warrant discussion.

Finally, Stierwalt argues that the evidence was insufficient for the jury to convict him on any of the charges. We have reviewed the record in the manner required in light of the jury verdict, *see United States v. Longie*, 984 F.2d 955, 960 (8th Cir.1993), and we conclude that Stierwalt's argument is without merit. The evidence of his crimes is overwhelming and largely uncontroverted.

The judgment of the District Court is affirmed.