OPINION
{¶ 1} Plaintiff-appellant state of Ohio (hereinafter "plaintiff" or "appellant") appeals from the January 22, 2003 decision and judgment entry of the Franklin County Court of Common Pleas granting defendant-appellee Trent R. Weiser's (hereinafter "defendant" or "appellee") motion to dismiss indictment. For the reasons which follow, we reverse.
 {¶ 2} At approximately 5:00 a.m. on May 27, 2001, Katie Dietz was sleeping on the living room couch at her friend Brad Glessner's apartment, 4927 Archdale Lane, Columbus, Ohio. She awoke to find a man standing over her masturbating. Ms. Dietz did not recognize the intruder and asked him what he was doing. The intruder proceeded to grab her arm and leg. Ms. Dietz yelled for Mr. Glessner, at which time the intruder fled the apartment. She watched out the front window and saw the intruder flee to the right of the apartment.
 {¶ 3} Mr. Glessner came downstairs and Ms. Dietz described the intruder as a man wearing a black fleece looking overcoat, jeans and a dark hat. Mr. Glessner searched outside unsuccessfully. He recruited his roommate, Daniel Harrigan, in the search, but, they were still unsuccessful.
 {¶ 4} During this time, Ms. Dietz was watching from an upstairs window and saw a group of three men standing to the right of the apartment. Messrs. Glessner and Harrigan began talking to the group, asking if they had seen the intruder. Ms. Dietz noticed one of the men, who was the defendant, wearing a dark hat, black fleece pullover and jeans. At that time, she exited the apartment and approached the group, pointing at defendant, identifying him as the intruder.
 {¶ 5} Ms. Dietz and Messrs. Glessner and Harrigan confronted defendant. As the situation grew heated, Ms. Dietz feared Messrs. Glessner and Harrigan would beat up/assault defendant. To avoid this, Ms. Dietz maintained she recanted her identification of defendant. At that point, defendant and the two other men entered an apartment.
 {¶ 6} Awhile later, police detectives arrived and Ms. Dietz indicated she was certain defendant was the intruder. The detectives went to the apartment at 4907 Archdale Lane, Columbus, Ohio. A male answered the door and the detectives saw defendant, wearing a black fleece pullover, blue jeans and a hat in his lap, sleeping in a chair.
 {¶ 7} Defendant spoke with the detectives and, according to the progress of investigation, voluntarily agreed to being processed through the ID Bureau. However, the progress characterized this elsewhere as an arrest. Defendant was taken to Columbus Police Headquarters where he was processed. Defendant waived his Miranda rights and gave a written statement to the detectives. Additionally, his interrogation was videotaped.
 {¶ 8} Defendant informed the detectives the night before he and the other men in the apartment watched a basketball game and ate pizza. Around 4:30 a.m., his friend, Dan, and he went to eat at a nearby Steak'n Shake restaurant. Upon returning, they entered the apartment and shortly thereafter heard yelling outside. They went outside and were told of the break-in. While acknowledging Ms. Dietz accused him of being the intruder, he denied any involvement, maintaining he was with his friends the whole night.
 {¶ 9} After completing his statement, defendant was released. He was not officially charged with a crime and was not required to post bond. The police returned him to the apartment complex.
 {¶ 10} Detectives spoke with several other males who were in the apartment with defendant. However, most indicated they were asleep during the events. The two men outside with defendant stated defendant was with them the entire night.
 {¶ 11} One to two months later, defendant received a telephone call from someone whom he believed to be with the Columbus Police Department (hereinafter referred to as "detective"). The detective requested defendant take a polygraph test. After a five to seven minute conversation, defendant informed the detective he did not believe he needed to take the test. He indicated he would call the detective back if he changed his mind.
 {¶ 12} On August 7, 2002, defendant was indicted for burglary, kidnapping and abduction.
 {¶ 13} On August 13, 2002, defendant filed his demand for discovery. Plaintiff responded:
At the present time, the prosecution is unaware of any evidence which is favorable to the defendant and material either to the guilt or punishment of the defendant.
(See Notice of Intention to Use Evidence.)
 {¶ 14} On December 26, 2002, defendant filed a motion to dismiss. Defendant argued plaintiff's unjustifiable delay in prosecuting the charges against him prejudiced him and violated his rights to a speedy trial and due process of law pursuant to Article I, Sections 10 and 16 of the Ohio Constitution, and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. The trial court conducted an evidentiary hearing on January 13, 2003.
 {¶ 15} The parties agreed to the following stipulations at the evidentiary hearing:
1. In the early morning hours of May 27, 2001, the Columbus police did interview defendant's friends who were present at the apartment complex, but summaries of those interviews are not available,
2. The police did not perform a neighborhood canvass,
3. The police did not lift fingerprints from the crime scene,
4. No other tests were conducted to obtain evidence,
5. All potential witnesses who were interviewed about the incident were interviewed on May 27, 2001,
6. The defendant was interviewed at Columbus Division of Police headquarters, with the interview having been videotaped, but the videotape has been destroyed (or taped over) and is no longer available.
(Trial court decision at 4; see, also, Tr. 29-30.) Defendant was the only witness to testify at the evidentiary hearing.
 {¶ 16} On January 22, 2003, the trial court granted defendant's motion to dismiss. The trial court concluded defendant's speedy trial rights were violated and defendant was prejudiced by plaintiff's delay of more than one year in indicting him on crimes for which he was previously arrested and released. Moreover, the trial court found plaintiff failed to provide evidence justifying the delay.
 {¶ 17} Appellant timely appealed and asserts the following assignment of error:
The trial court erred in dismissing the indictment on "speedy trial" grounds.
 {¶ 18} Appellant argues, while the trial court invoked speedy trial rights in granting defendant's motion to dismiss, the trial court's analysis appeared to draw on due process standards governing pre-indictment delay. As such, appellant addresses both principles in arguing why appellee's motion to dismiss should have been denied.
 {¶ 19} We will begin our analysis by examining whether appellee's speedy trial rights were invoked and, if so, violated.
 {¶ 20} Appellant argues appellee failed to establish his speedy trial rights were invoked. An arrest alone does not trigger speedy trial rights. Instead, the arrest must be the beginning of continuing restraints on an individual's liberty. This was not the case with appellee. If it is assumed appellee was arrested at the time he was taken to the police station, he was released without any criminal charge being filed. Moreover, he was not required to post a bond. Thus, appellee did not have any continuing restraints upon his liberty and his speedy trial rights were not triggered.
 {¶ 21} Notwithstanding, if his speedy trial rights were triggered by mere arrest, appellant maintains they were short lived. Just as the dismissal of an indictment stops the application of speedy trial rights, appellant argues appellee's release without the filing of charges or the requirement of bail stopped the speedy trial clock.
 {¶ 22} In response, appellee argues his arrest triggered his speedy trial rights. Appellee contends the Ohio Supreme Court in Ohio v.Selvage (1997), 80 Ohio St.3d 465, 468, expressly recognized the holding of Doggett v. United States (1992), 505 U.S. 647, 112 S.Ct. 2686, that arrest triggers speedy trial rights. Moreover, appellee contends appellant's position that the Doggett court's use of "arrest" did not mean "arrest" but, rather, indictment or incarceration is directly contradicted by case law.
 {¶ 23} The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial." In United States v. MacDonald
(1982), 456 U.S. 1, 8, 102 S.Ct. 1497, the Supreme Court discussed the purpose of the Sixth Amendment:
The Sixth Amendment right to a speedy trial is * * * not primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.
 {¶ 24} The speedy trial provision provides "`an important safeguard to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation and to limit the possibilities that long delay will impair the ability of an accused to defend himself.'" United States v. Marion (1971), 404 U.S. 307, 320,92 S.Ct. 455, citing United States v. Ewell (1966), 383 U.S. 116, 120,86 S.Ct. 773. As such, speedy trial rights are not invoked until "arrest, indictment, or other official accusation." Doggett, supra.
 {¶ 25} As argued by appellee, the language in Doggett[1] implies arrest alone is sufficient to trigger the right to a speedy trial. However, upon careful reading of Doggett and the forerunning cases ofMacDonald and Marion, supra, it is clear the use of the term "arrest" connotes more than an arrest without the filing of charges or posting of bond. Instead, it intimates an arrest that "is the beginning of continuing restraints on defendant's liberty imposed in connection with the formal charge on which defendant is eventually tried." United Statesv. Stead (1984), 745 F.2d 1170, 1172.
 {¶ 26} The policy reasons espoused by the Doggett court when it stated "arrest" were the same as those discussed in MacDonald and Marion
when the Supreme Court held speedy trial rights did not arise "until charges are pending," MacDonald, supra, at 7, or by "either a formal indictment or information or else the actual restraints imposed by arrest and holding to answer a criminal charge * * *." Marion, supra, at 321. Specifically, the Doggett court stated, "[w]e have observed in prior cases that unreasonable delay between formal accusation and trial threatens to produce more than one sort of harm, including `oppressive pretrial incarceration,' `anxiety and concern of the accused,' and `the possibility that the [accused's] defense will be impaired' by dimming memories and loss of exculpatory evidence." Doggett at 654.[2] As such, the Doggett court, as with previous decisions, continued its focus on the restraints upon an individual's liberty which accompanies a formal accusation. Therefore, while the Doggett court failed to explicitly state "and held to answer," the analysis makes clear this is the situation which must be present, and not mere arrest, to trigger speedy trial rights.
 {¶ 27} Support for this conclusion is found in United States v.Stierwalt (1994), 16 F.3d 282 and State v. Medina (1997), 190 Ariz. 418,949 P.2d 507, which are both factually similar to the instant case. InStierwalt, Melvin Stierwalt was arrested and released without being charged or required to post bond. In denying his motion to dismiss based on the Sixth Amendment right to a speedy trial, the Stierwalt court stated at 284:
Although, "the actual restraints imposed by arrest and holding to answer a criminal charge" will trigger Sixth Amendment speedy trial concerns, Marion, 404 U.S. at 320, and Stierwalt in fact was arrested on February 8, 1991, he admits that he was released without being charged and "was not required to post bond, nor was he given a court date to appear and answer to any charges." * * * Therefore, we hold that Stierwalt's Sixth Amendment right to a speedy trial was not implicated by the preindictment delay.
 {¶ 28} In Medina, on November 13, 1993, Eusedio Medina was arrested for DUI and released on his own recognizance. No charges were filed at that time. On March 31, 1994, a complaint was filed against Mr. Medina charging him with two counts of aggravated DUI. In July 1994, a warrant was issued for Mr. Medina's arrest. However, the warrant was not executed until January 1996. The Medina court dismissed Mr. Medina's argument his right to a speedy trial attached when he was arrested and released with no charges filed. "If * * * [a defendant] is arrested and released without charge soon thereafter, the right to a speedy trial does not attach because no charge is outstanding." Medina at 421.
 {¶ 29} Finally, we are reticent to conclude the Supreme Court intended to alter 30 years of precedent without specifically stating so and explaining its reasons. Accordingly, we decline to alter a long established legal principle based upon precedent that is factually distinct and does not address the principle.
 {¶ 30} In the instant action, appellee was arrested and released without charges being filed or having to post bond. Accordingly, his arrest did not trigger his speedy trial rights. Instead, his speedy trial rights were triggered upon his indictment.
 {¶ 31} Turning to preindictment delay, appellant argues appellee failed to demonstrate actual prejudice. First, the trial court's reliance upon the absence of witness statements is misplaced. Nothing in the stipulation or the other evidence supports a finding that witness statements were missing or that they were discoverable pursuant to Crim.R. 16(B)(1)(g).
 {¶ 32} Second, appellant argues the missing videotape of defendant's statement to police on the day of the incident, due to the police inadvertently taping over it, did not violate any discovery rules. Appellant is required to disclose evidence it has, not evidence which no longer exists for whatever reason. Moreover, as the videotape was not destroyed in bad faith, no constitutional question arises from its destruction. Further, even if there was a discovery violation, defendant failed to demonstrate actual prejudice resulting from the delay in prosecuting him. The parties stipulated the taping over occurred almost immediately. Even in a prompt prosecution, the videotape of defendant's statement would still have been unavailable. As such, the delay in prosecuting defendant was not the cause of the taping over of defendant's statement, and appellee is unable to assert a pre-indictment delay claim upon this basis.
 {¶ 33} Furthermore, appellant contends the trial court's granting of appellee's motion to dismiss based upon the police's failure to investigate is not a proper consideration in determining whether appellee suffered actual prejudice as a result of the preindictment delay. The due process focus is on whether the delay caused actual prejudice. There is no due process requirement for the police to conduct an investigation in a certain manner.
 {¶ 34} Finally, appellant maintains appellee's claim of anxiety stems from the fact he is facing charges. It does not flow from the delay between the incident and his indictment. As such, it does not support a finding the delay caused appellee actual prejudice.
 {¶ 35} In response, appellee contends his due process rights were violated as a result of the 14-month delay between arrest and indictment. First, he alleges the delay caused him actual prejudice. His memory, as well as the memories of his friends who were with him, have undoubtedly faded with respect to the events and precise time frames. This situation is exacerbated by the loss of the witness statements and the videotaped interrogation of appellee. Appellee argues the witness statements were exculpatory evidence as it was corroborative alibi testimony. Additionally, the destroyed videotape not only provided appellee's version of events within hours of the incident, it displayed his demeanor and showed the clothing he wore that evening.
 {¶ 36} The second aspect appellee argues is that appellant failed to offer an explanation for the 14-month delay. The evidence presented at the hearing before the trial court included a stipulation the police did not conduct any test to obtain evidence in this matter. Instead, the investigation was idle from the day of the alleged crime until appellee's indictment.
 {¶ 37} An accused's due process rights can be violated if the state delays seeking an indictment for alleged criminal behavior:
An unjustifiable delay between the commission of an offense and a defendant's indictment therefor, which results in actual prejudice to the defendant, is a violation of the right to due process of law under Section 16, Article I of the Ohio Constitution and the Fifth andFourteenth Amendments to the United States Constitution.
State v. Luck (1984), 15 Ohio St.3d 150, paragraph two of the syllabus.
 {¶ 38} In Luck, the Ohio Supreme Court utilized the test set forth in Marion, supra, and United States v. Lovasco (1977), 431 U.S. 783,97 S.Ct. 2044, to determine whether an indictment should be dismissed for preindictment delay. Luck, supra, at 153-154. A defendant bears the initial burden of producing evidence demonstrating the delay caused him actual prejudice. Id. at 157-158. "Any claim of prejudice, such as the death of a few witnesses, lost evidence, or faded memories, must be balanced against the other evidence in order to determine whether actual prejudice will be suffered by the defendant at trial." State v. Collins
(1997), 118 Ohio App.3d 73, 76-77, citing Luck. "It is the defendant's burden to demonstrate the exculpatory value of the alleged missing evidence." State v. Peoples, Franklin App. No. 02AP-945, 2003-Ohio-4680, at ¶ 30, citing United States v. Doerr (C.A. 7, 1989), 86 F.2d 944. Finally, a court will not speculate as to whether the delay somehow prejudiced a defendant. State v. Jones (Oct. 22, 1991), Montgomery App. No. 12448.
 {¶ 39} Upon establishing actual prejudice, the burden shifts to the state to produce evidence justifying the delay. Luck, supra, at 158. An intentional delay to obtain a tactical advantage over the defendant is unjustifiable. Further, when the state negligently ceases active investigation of a case, later deciding to commence prosecution upon the same evidence which was available at the time the investigation ceased, the delay is not justified. Id.
 {¶ 40} Appellee fails to meet his burden of producing evidence which demonstrates the 14-month delay caused him actual prejudice. First, the destroyed videotape is not unavailable to appellee as a result of the delay by appellant in prosecuting him. Instead, its unavailability is the result of appellant's negligence in taping over appellee's interrogation, which occurred almost immediately after his interrogation. As such, there is no connection between the unavailability of the videotape and the delay in prosecuting appellee. As asserted by appellant, if appellee had been indicted shortly after his arrest, the videotape would still have been unavailable. Moreover, appellee testified his written statement was substantially the same as what was recorded on the videotape. As such, his account of events is available to him. Thus, defendant failed to establish actual prejudice as a result of the videotape's destruction.[3]
 {¶ 41} Second, regardless of whether or not the witness statements at one time existed and no longer do, the witnesses are available to appellee. The stipulation indicated there were no missing witnesses. Moreover, appellee testified at the hearing he keeps in touch with the people he was with that evening. He did not testify they would be unable or unwilling to testify at his trial. As such, there are no witnesses, who may support appellee's alibi, who are missing. Further, appellee did not present evidence at the hearing that his witnesses' memories were hazy or nonexistent with respect to the events of May 27, 2001. Accordingly, these witnesses are still available to appellee and he can have them testify on his behalf at trial. Therefore, appellee failed to prove he suffered actual prejudice as a result of the alleged missing witness statements.
 {¶ 42} In its decision, the trial court expressed concern that appellee will be forced to defend against these charges in the face of an almost non-existent investigation by the police. Specifically, the trial court noted the fact the police did not lift fingerprints, did not canvass the apartment complex or neighborhood and did not independently verify appellee's story he was at Steak'n Shake. While a more extensive investigation may have been useful to either appellant or appellee, the police were not legally obligated to take any of the steps discussed by the trial court. Police are not constitutionally obligated to use a particular investigatory tool or perform a particular test. Youngblood,
supra, at 59.
 {¶ 43} Finally, appellee's testimony at the evidentiary hearing reveals that any anxiety he was experiencing was not the result of the delay by appellant:
Q. [Prosecutor]: All right. Now, after you were arrested on this or after May 27th, Trent, did you have any problems with anxiety or nerves in regard to this incident?
A. [Appellee]: Well, after I received the phone call, I honestly thought that the case was over. I didn't think they had any evidence on me. So, when I get — I mean, I didn't do this.
So, I get a call. And, in fact, it has been brought back up or been, you know, being tried.
So, I didn't know what to expect. I'm facing a big, a big deal for something I didn't do. And, yes, I began having anxiety. I went on medication, which I'm off now. But yes, it caused a lot of stress.
(Tr. 18-19). Both after his arrest and talking with the detective regarding the polygraph, appellee considered the incident to be over. It was not until he was charged he experienced anxiety. Thus, the realization of being charged was the cause of his stress, not the delay in being indicted.
 {¶ 44} In conclusion, balancing the nonexistent interrogation videotape and the alleged missing witness statement against the evidence which remains, appellee's written statement and the availability of his witnesses to testify, appellee failed to establish he suffered actual prejudice as a result of the delay. Moreover, the lack of additional evidence due to a truncated investigation by the police is not properly considered in determining whether appellee suffered actual prejudice. Also, any concern of the defendant experiencing anxiety over the delay is not present here. The anxiety appellee experienced was the result of charges being brought against him. As most criminal defendants experience anxiety over pending charges, this alone does not support a Due Process violation. Accordingly, appellee failed to establish actual prejudice.
 {¶ 45} Accordingly, appellant's assignment of error is hereby sustained, and the decision of the Franklin County Court of Common Pleas is reversed and this cause remanded to that court for further proceedings consistent with law in accordance with this opinion.
Judgment reversed and cause remanded.
Bryant and Sadler, JJ., concur.
[1] The court notes the facts currently before us are dissimilar to the facts of Doggett. In Doggett, Mr. Doggett was indicted in 1980 and not arrested until 1988. As such, the 1980 indictment constituted a formal accusation against Mr. Doggett.
[2] In MacDonald, the Supreme Court stated at 8, "[t]he speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges".
[3] We note there is no Due Process Clause violation as appellee does not assert the police acted in bad faith, See Arizona v. Youngblood
(1988), 488 U.S. 51, 109 S.Ct. 333; State v. Wooten (Mar. 25, 2002), Athens App. No. 01CA31.