OPINION
{¶ 1} Defendant-appellant, Shaun T. Dennis, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty, pursuant to a jury verdict, of aggravated robbery in violation of R.C. 2911.01, robbery in violation of R.C. 2911.02, and kidnapping in violation of R.C. 2905.01; each offense carried a firearm specification. Because the manifest weight of the evidence supports defendant's convictions, and because the trial court properly ruled on defendant's constitutional and evidentiary challenges, we affirm.
 {¶ 2} According to the state's evidence, Helen Harris, Nathaniel Williams, and Frank Stockton were sitting on Harris' deck, drinking beers at two in the morning on September 4, 2003, when a man wielding two handguns ran onto the deck and demanded the keys to a white car parked in front of Harris' house. The man, later identified as defendant, stood behind Harris and faced Williams and Stockton; he told them not to move and not to "look at him." (Tr. Vol. I, 97.) Although the man initially pointed his guns at Harris and Williams, he shifted a gun toward Stockton and told him to sit down when Stockton tried to stand up. Harris and Williams testified they were afraid the man was going to kill them.
 {¶ 3} Harris, Williams, and Stockton explained to the man that they did not have the keys to the car, but the man repeated his demand and revealed a third gun tucked into his belt. A truck suddenly pulled into the alley alongside the deck, and the man asked who was in the truck; the three responded that it was a neighbor. The man then jumped off the deck and ran down the alley to where the truck was parked; Harris, Williams, and Stockton ran inside Harris' house.
 {¶ 4} The truck's driver, Melanie Spears, saw the man leave Harris' deck and approach her and Eric Higgenbotham as they stood outside Higgenbotham's house along the alleyway. The man pointed two guns at Spears, forced her back into her truck, and made her drive away from the house; Higgenbotham ran to Harris' house and called the police. The man drove Spears to another location where she allegedly was raped.
 {¶ 5} Detective David McKee responded to Higgenbotham's call on the morning of September 4, 2003. McKee investigated the alleged crimes against Spears, but he was unaware that Harris, Williams, and Stockton "were witnesses or that they were victims [of other crimes]." (Tr. Vol. II, 229.) Spears eventually escaped her captor and went to the hospital where she was examined for evidence of rape. McKee interviewed Spears on the night of the incident and, a week later, he showed her a six-photo array containing defendant's 1992 Department of Motor Vehicle ("DMV") photograph. Although Spears initially did not identify defendant as the assailant, she later selected defendant from a six-photo array containing defendant's most recent DMV photograph. Police also matched defendant's fingerprints to those lifted from Spears' truck.
 {¶ 6} By indictment filed on November 10, 2003 in case No. 03CR-7539, defendant was charged with two counts of rape, two counts of abduction, and one count of kidnapping regarding Spears. In the spring of 2004, the Franklin County Prosecutor's Office directed McKee to investigate the crimes committed against Harris, Williams, and Stockton. McKee interviewed Harris and Stockton but did not memorialize their statements. Although Harris, Stockton, and Williams were unable to identify defendant as the assailant from a six-photo array, Stockton and Williams identified defendant at trial as the assailant.
 {¶ 7} By indictment filed on May 6, 2004 in case No. 04CR-3040, defendant was charged with one count of abduction for the offense against Harris; by indictment filed on September 10, 2004, defendant was charged with aggravated robbery, robbery, and kidnapping for the offenses against Harris and Stockton in case No. 04CR-5943. Case No. 03CR-7539 was dismissed; the state requested nolle prosequi in case No. 04CR3-040; case No. 04CR-5943 was tried, beginning September 2, 2005. On September 12, 2005, the court declared a mistrial without prejudice to the state after finding the jury unable to reach a unanimous verdict. Case No. 04CR-5943 was retried on October 31, 2005; defendant represented himself.
 {¶ 8} To rebut the state's evidence noted above, defendant called several witnesses to present an alibi defense. Scott Coleman, defendant's uncle, testified defendant was at a family gathering in the early hours of September 4, 2003. Coleman later testified, however, he was not certain whether the reunion was on the night of September 3 or September 4, 2003. Denise Dennis, defendant's mother, testified the family gathering was in the evening of September 4, 2003.
 {¶ 9} After a six-day trial, the jury returned its verdicts finding defendant guilty of aggravated robbery, robbery, and kidnapping, each with a firearm specification. The court merged defendant's offenses and imposed a ten-year sentence for the allied offenses, plus a three-year sentence for the firearm specifications.
 {¶ 10} Defendant appeals, assigning four errors:
First Assignment of Error
The trial court erred by denying Appellant's motions to dismiss.
Second Assignment of Error
Appellant was denied a fair trial by the introduction of inflammatory, emotional testimony.
Third Assignment of Error
The trial court sentenced Appellant pursuant to provisions of the Ohio Revised Code subsequently declared unconstitutional by the Ohio Supreme Court.
Fourth Assignment of Error
Appellant's convictions are contrary to the manifest weight of the evidence.
For ease of discussion, we address defendant's assignments of error out of order.
I. Defendant's Fourth Assignment of Error
 {¶ 11} In his fourth assignment of error, defendant contends his convictions are against the manifest weight of the evidence. When presented with a manifest weight challenge, the appellate court engages in a limited weighing of the evidence to determine whether sufficient, competent, credible evidence permits reasonable minds to find guilt beyond a reasonable doubt. Statev. Conley (Dec. 16, 1993), Franklin App. No. 93AP3-87. To make the determination, the court reviews the entire record as the "thirteenth juror" and decides whether the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins (1997), 78 Ohio St.3d 380, 387. Determinations of credibility and weight of the testimony remain within the province of the trier of fact. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 12} Defendant contends his convictions are against the manifest weight of the evidence because the state's witnesses initially did not identify defendant as the assailant from a six-photo array, and because the police did not record the witnesses' statements regarding the incident. Defendant's arguments essentially challenge the credibility of the state's witnesses. Determining the credibility of a witness, however, remains within the province of the jury. Although an appellate court must act as a "thirteenth juror" when considering whether the manifest weight of the evidence requires reversal, it must also give due deference to the fact finder's determination of the witnesses' credibility. State v. Covington, Franklin App. No. 02AP-245, 2002-Ohio-7037, at ¶ 28; State v. Hairston, Franklin App. No. 01AP-1393, 2002-Ohio-4491, at ¶ 74.
 {¶ 13} Although Harris, Stockton, Williams, and Spears were unable to initially identify defendant as the assailant, each witness presented a plausible explanation, and, aside from Harris, who testified that she never saw defendant, each witness subsequently identified defendant as the assailant. Williams and Stockton were unable to identify defendant in a photo array but identified defendant as the assailant in court. Williams explained that defendant's photo in the array did not look like defendant in person but he was positive defendant was the gunman. Stockton clarified that he did not recognize defendant in the photo because "this guy in the picture looks bigger. Complexion looks lighter." (Tr. Vol. I, 181.) Stockton identified defendant in court by both his physical stature and voice. Because the state submitted the six-photo array into evidence, the jury could assess the credibility of Stockton and Williams' subsequent in-court identifications by comparing defendant's photo to his in-court appearance.
 {¶ 14} Spears did not identify defendant from the initial six-photo array containing defendant's 1992 DMV photo, but she subsequently identified defendant from a six-photo array containing defendant's most recent DMV photo. Similar to its approach regarding the testimony of Stockton and Williams, the state submitted to the jury the array containing defendant's 1992 DMV photo and one containing defendant's most recent DMV photo so the jury could compare the photos and assess the credibility of Spears' subsequent identification. Moreover, the jury need not have relied solely on Spears' identification testimony, as not only did Spears' testimony place defendant in her truck on the morning of the incident, but police lifted fingerprints from her truck and identified them as belonging to defendant.
 {¶ 15} As to defendant's contentions regarding the lack of witness statements resulting from police investigation, the state presented an explanation through the testimony of the investigating officer. McKee testified he did not record the witnesses' statements because he did not feel it was necessary for the investigation. He explained he generally records witnesses' statements only when they are specifically detailed or lengthy. The jury was free to believe or disbelieve McKee's testimony.
 {¶ 16} Defendant cross-examined the state's identification witnesses, pointed out the witnesses' inability to initially identify defendant from the six-photo array, and openly questioned their ability to identify defendant after a significant time lapse. Defendant also questioned McKee's motive for investigating the aggravated robbery, robbery, and kidnapping case and McKee's reason for failing to memorialize the witnesses' statements. The court specifically instructed the jury on how to evaluate the weight and credibility of each witness. The jury thus had the opportunity to hear all the testimony presented and to evaluate the weight and credibility of each witness, and it chose to believe none, some, or all of the state's witnesses. Because the jury could properly believe the witnesses' testimony, and such testimony not only identified defendant as the assailant but also demonstrated defendant committed aggravated robbery, robbery, and kidnapping in his attempt to steal the car parked in front of Harris' house, we cannot conclude the jury lost its way. Accordingly, defendant's fourth assignment of error is overruled.
II. Defendant's First Assignment of Error
 {¶ 17} Defendant's first assignment of error contends the trial court erred by denying his motion to dismiss for pre-indictment and post-indictment delay. We review de novo the denial of defendant's motion to dismiss. State v. Rodgers, 166 Ohio App.3d 218, 2006-Ohio-1528, at ¶ 6.
 {¶ 18} Defendant first argues that the trial court erred by denying his motion to dismiss for pre-indictment delay. Defendant contends he was severely prejudiced by the indictments' staggered timing because "he must re-prepare and re-strategize." Defendant also argues that because of the third indictment's delay, "witnesses are unable to recall accurately the events of the distant past, defendant is also unable to recall or remember certain events, [and] two of the defense witnesses has suffered sever[e] health problems such as heart attacks and strokes." Lastly, defendant maintains prejudice through his prolonged incarceration.
 {¶ 19} An unjustifiable delay between the commission of an offense and the indictment, resulting in actual prejudice to the defendant, violates a defendant's due process rights. State v.Luck (1984), 15 Ohio St.3d 150, paragraph two of the syllabus.Luck adopted a two-part test to determine whether pre-indictment delay constitutes a due process violation. A defendant bears the initial burden of producing evidence demonstrating the delay caused actual prejudice to his or her defense. Id. at 157-158. If a defendant establishes actual prejudice, the burden shifts to the state to produce evidence justifying the delay. Id. at 158. Any claim of prejudice, such as the death of witnesses, lost evidence, or faded memories, must be viewed in light of the state's reason for the delay to determine whether a defendant will suffer actual prejudice at trial. Statev. Weiser, Franklin App. No. 03AP-95, 2003-Ohio-7034, at ¶ 38;State v. Peoples, Franklin App. No. 02AP-945, 2003-Ohio-4680, at ¶ 30. Proof of actual prejudice must be specific, particularized, and non-speculative; a court will not speculate as to whether the delay somehow prejudiced a defendant.Peoples; Weiser, supra. "It is the defendant's burden to demonstrate the exculpatory value of the alleged missing evidence." Peoples, supra.
 {¶ 20} Although defendant may have suffered some prejudice as a result of the delay between the date defendant committed aggravated robbery, robbery, and kidnapping and the date defendant was indicted for those offenses, defendant's claims of prejudice are speculative at best. Defendant fails to explain how "re-preparing and re-strategizing" caused him actual, substantial prejudice. Although defendant contends the memories of his alibi witnesses faded over time, he fails to demonstrate either how his alibi witnesses, presumably Scott Coleman and Denise Dennis, would have testified differently with a shorter delay or how their testimony would change the outcome of the trial. Similarly, defendant does not clarify how the testimony of his missing alibi witnesses would have been exculpatory in nature, especially in light of the testimony of Coleman and Dennis. Finally, defendant does not explain how his prolonged incarceration prevented him from defending the charges. Because defendant did not establish actual prejudice, the trial court properly denied defendant's motion to dismiss for pre-indictment delay.
 {¶ 21} Defendant next argues that the trial court erred by denying his motion to dismiss for post-indictment delay under R.C. 2945.71. Specifically, defendant contends the time for trial of his aggravated robbery, robbery, and kidnapping charges began to run when the original abduction, rape, and kidnapping charges were brought against him, because those additional charges arise from the same facts as the original charges.
 {¶ 22} An unreasonable delay between an arrest and trial violates a defendant's right to a speedy trial guaranteed by theSixth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution. State v. Baker (1997),78 Ohio St.3d 108, 110. The states are obligated under theFourteenth Amendment to afford such a right, Klopher v. NorthCarolina (1967), 386 U.S. 213, 222-223, but they are free to prescribe the specific period of reasonableness required to conform to the constitutional requirements. Baker, supra, citing Barker v. Wingo (1972), 407 U.S. 514, 523. Pursuant to the constitutional mandate, Ohio enacted R.C. 2945.71 to 2945.73, which designate specific time requirements for the state to bring an accused to trial.
 {¶ 23} R.C. 2945.71(D) states, in pertinent part, that "[a] person against whom one or more charges of different degrees, whether felonies, misdemeanors, or combinations of felonies and misdemeanors, all of which arose out of the same act or transaction, are pending shall be brought to trial on all of the charges within the time period required for the highest degree of offense charged." A person facing a felony charge must be brought to trial within 270 days after the person's arrest. R.C.2945.71(C)(2). If, however, multiple indictments are filed, subsequent indictments are "not subject to the speedy-trial timetable of the initial indictment, when additional criminal charges arise from facts different from the original charges, or the state did not know of these facts at the time of the initial indictment." Baker, supra; cf. State v. Adams (1989),43 Ohio St.3d 67, 68 (holding that subsequent charges made against an accused would be subject to the same speedy trial constraints as the original charges, if additional charges arose from the same facts as the first indictment). "Additional crimes based on different facts should not be considered as arising from the same sequence of events for the purposes of speedy-trial computation."Baker, at 111.
 {¶ 24} Here, the various offenses defendant allegedly committed on September 4, 2003 led to three separate indictments: (1) on November 10, 2003, defendant was indicted and charged with two counts of rape, two counts of abduction, and one count of kidnapping for the offenses against Melanie Spears; (2) on May 6, 2004, defendant was indicted and charged with one count of abduction for the offense against Helen Harris; and (3) on September 10, 2004, defendant was indicted and charged with aggravated robbery, robbery, and kidnapping for the offenses against Harris and Stockton.
 {¶ 25} The second and third indictments resulted from McKee's investigation into the abduction, aggravated robbery, robbery, and kidnapping of Harris, Stockton, and Williams, where defendant walked onto Harris' deck, pointed two guns at Harris, Stockton, and Williams, and demanded keys to a white car parked in front of Harris' house. The original indictment against defendant resulted from McKee's investigation into the abduction, kidnapping, and rape of Spears, where, after defendant saw a truck pull into an alley behind Higgenbotham's house, he left Harris' deck and approached Higgenbotham's house. Defendant pointed two guns at Spears, forced her into her truck, and compelled her to drive to another location where she allegedly was raped.
 {¶ 26} Although defendant's multiple indictments derived from a series of offenses that occurred on the same day and within the same general vicinity, defendant changed his intent from stealing the white car in front of Harris' house to allegedly abducting Spears from the alley behind Higgenbotham's house, taking her to another location, and raping her. Because the first indictment, as compared to the second and third indictments, was based on different offenses with different animus, at different times, in different locations, and against different victims, the factual issues of each indictment are not the same, and thus the subsequent indictments are not subject to the speedy trial timetable of the initial indictment. See State v. Haggard (Oct. 6, 1999), Lorain App. No. 98CA007154 (holding the state not subject to the speedy trial timetable of the initial indictment when additional charges involved separate victims, separate assaults, and separate animus as to the assault of each victim);State v. Grover (Sept. 25, 1998), Lake App. No. 97-A-0021 (finding crimes of aggravated robbery and aggravated burglary unrelated for speedy trial timetable purposes because each crime involved separate victim and separate animus). Accordingly, defendant's speedy trial timetable did not begin to run on November 10, 2003, the date of defendant's first indictment. Because the trial court properly denied defendant's motion to dismiss for pre-indictment and post-indictment delay, defendant's first assignment of error is overruled.
III. Defendant's Second Assignment of Error
 {¶ 27} Defendant's second assignment of error contends the trial court erred by allowing Spears to testify about the dismissed rape charge. The admission or exclusion of evidence lies in the trial court's sound discretion, State v. Holloway,
Franklin App. No. 02AP-984, 2003-Ohio-3298, at ¶ 14, citingState v. Sage (1987), 31 Ohio St.3d 173, 180, and the judgment of the trial court will not be reversed absent a clear showing of an abuse of discretion. State v. Scott (June 24, 1997), Franklin App. No. 96APA04-492, citing State v. Hymore (1967),9 Ohio St.2d 122, 128. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable. Holloway, at ¶ 14, citing Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 28} Defendant claims Spears' testimony regarding the dismissed rape charge was inadmissible under Evid.R. 404(B), R.C.2945.59, and Evid.R. 403(A). Evid.R. 404(B) states that "[e]vidence of the other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." See R.C. 2945.59 (stating when other acts evidence may be admissible). Evid.R. 403(A) states that "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury."
 {¶ 29} Here, the court allowed the state to call Spears as a witness but instructed the parties that her testimony be limited to identifying defendant immediately after the robbery and to providing a foundation for the fingerprint evidence. Similarly, the court limited McKee's testimony to the robbery case and instructed the state to avoid questions involving the detective's position in the sexual abuse squad or Spears' rape case. Pursuant to the trial court's instructions, the state also redacted information from its exhibits that referred to the rape charges.
 {¶ 30} The court also repeatedly warned defendant to avoid referring to the rape case. Defendant, acting pro se, nonetheless questioned McKee about his investigation into the rape case, apparently attempting to show the evidence in the aggravated robbery case was improper because it was gathered in the rape investigation. Defendant asked McKee about his position on the sexual abuse squad, the redacted information in the exhibits referring to the rape charges and victims, the timeline of the evidence gathered in the rape and aggravated robbery cases, and the propriety of the investigation. Defendant also submitted the redacted exhibits in their original unaltered state. At recess the court ruled that defendant's line of questioning opened the door for the state to clarify the difference between the redacted and un-redacted exhibits and explain the timeline of its investigation "to the extent that they are relevant to this case and not more prejudicial than probative." (Tr. Vol. II, 284.)
 {¶ 31} After defendant cross-examined McKee, the court interjected into the state's re-direct examination of McKee, clarified the difference between the submitted exhibits, and instructed the jury that any evidence pertaining to the rape case "has no bearing on whether he did or did not do the aggravated robbery, robbery, and kidnapping with respect to Helen Harris and Frankie Stockton and Nate Williams that we're here for trial today." (Tr. Vol. II, 332-333.) The court then allowed the state to re-establish the investigation's timeline, including the interaction of evidence between the rape and aggravated robbery cases. At the conclusion of McKee's testimony, the jury was well aware of Spears' rape allegation.
 {¶ 32} Spears next testified about the events occurring on September 4, 2003. Although Spears specifically mentioned that defendant raped her, Spears' testimony focused on the events leading up to her alleged rape and abduction. She identified defendant as the gunman leaving Harris' deck and testified that defendant touched various parts of her truck's cab. When the state attempted to elicit details particular to the alleged rape, the court interrupted the state's line of questioning, and the state resumed questioning Spears on the timeline leading up to her interview with McKee.
 {¶ 33} At the trial's conclusion, the court instructed the jury: "Testimony was introduced by the defendant that he had been charged with other crimes. As I stated at the time the evidence was presented, evidence about other crimes the defendant may have committed may not be considered to prove that the defendant committed the offenses with which he is charged in this case. In addition, evidence that the defendant may have committed other crimes may not be considered to prove his character or to show that he acted in accordance with that character." (Tr. Vol. 5, 747-748.)
 {¶ 34} Although Evid.R. 404(B) generally prohibits evidence of other bad acts, defendant, not the state, initially elicited the testimony regarding the alleged rape. The trial court did not commit prejudicial error by allowing the state to clarify such evidence when defendant "opened the door" to it. State v.Clemence, Cuyahoga App. No. 81845, 2003-Ohio-3660, at ¶ 11. Before trial, the court correctly recognized the limitation imposed under Evid.R. 404(B) and prevented the state from introducing evidence regarding Spears' alleged rape and abduction. The court's order successfully avoided implicating defendant's "other acts" until defendant repeatedly questioned McKee about both the rape investigation and the relevance of the evidence it revealed to the aggravated robbery investigation. Defendant's line of questioning removed the protection afforded by Evid.R. 404(B) and any prejudice that otherwise may have accrued when the state referred to the rape allegation in questioning Spears. Because defendant initially elicited the prejudicial evidence, he effectively waived his right to contest its admissibility, and thus the court did not abuse its discretion by admitting such evidence.
 {¶ 35} Moreover, to the extent defendant did not waive his right to contest the introduction of Spears' testimony regarding the alleged rape under Evid.R. 403(B), the trial court's limiting instructions dealt with the issue appropriately in light of defendant's bringing the issue to the jury's attention through his examination of McKee. Accordingly, defendant's second assignment of error is overruled.
IV. Defendant's Third Assignment of Error
 {¶ 36} Defendant contends in his third assignment of error that the trial court violated Blakely v. Washington (2004),542 U.S. 296, by imposing consecutive sentences based on factual findings neither admitted by him nor found by a jury. Defendant claims that because the Supreme Court of Ohio found Ohio's R.C.2929.14(E)(4) unconstitutional while his direct appeal was pending, defendant's sentence should be reversed and remanded for resentencing.
 {¶ 37} In State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, the Supreme Court of Ohio applied Blakely to Ohio's sentencing laws and declared unconstitutional those statutes requiring judicial fact-finding in violation of a defendant'sSixth Amendment right to a trial by jury, including R.C. 2929.14(E)(4). The court severed the constitutionally offensive provisions from Ohio's sentencing laws and broadly applied its holding to all cases pending on direct review. Id. at ¶ 100, 104. Consistent with this court's opinion, however, a defendant sentenced afterBlakely "who did not assert a Blakely challenge in the trial court waives that challenge and is not entitled to a resentencing hearing based on Foster." State v. Draughon, Franklin App. No. 05AP-860, 2006-Ohio-2445, at ¶ 7.
 {¶ 38} Here, although the trial court sentenced defendant on November 8, 2005, over one year after the Blakely decision, defendant did not assert a Blakely challenge in the trial court. Pursuant to Draughon, defendant waived his Blakely
argument on appeal. Defendant's third assignment of error is overruled.
 {¶ 39} Having overruled defendant's four assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
Petree and Brown, JJ., concur.