**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 05-4681**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

JOSEPH EARL HOPKINS,

Defendant - Appellant.

---

Appeal from the United States District Court for the District of
South Carolina, at Anderson.   G. Ross Anderson, Jr., District
Judge.  (CR-04-822)

---

Submitted:  June 30, 2006          Decided:  August 31, 2006

---

Before WILKINSON, MOTZ, and KING, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

Matthew J. Kappel, Greenville, South Carolina, for Appellant.
William Corley Lucius, Assistant United States Attorney,
Greenville, South Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.
See Local Rule 36(c).

PER CURIAM:

Joseph Earl Hopkins was convicted by a jury of one count of conspiracy to defraud the United States by passing or uttering counterfeit U.S. currency, 18 U.S.C. §§ 371, 471, 472, 473 (2000), and sentenced to 60 months of imprisonment.  Hopkins' attorney has filed a brief in accordance with Anders v. California, 386 U.S. 738 (1967), asserting that there are no meritorious issues for appeal but raising the following potential issues:  (1) the Government's use of a co-conspirator's guilty plea as substantive evidence of Hopkins' guilt constituted plain error; (2) the testimony as to an out-of-court statement by a Government witness violated Hopkins' Sixth Amendment right to confrontation; (3) the Government's questioning as to why Hopkins did not give Secret Service agents a statement violated his Fifth Amendment rights; (4) the evidence was insufficient to support Hopkins' conviction; and (5) the district court erred at sentencing in attributing over $40,000 in counterfeit currency to Hopkins.  Although informed of his right to file a pro se supplemental brief, Hopkins has not done so.

The evidence adduced at Hopkins' trial established the following.  In June 2004, Hopkins' co-defendant Joseph Outz was apprehended by Easley, South Carolina, police after he made multiple passes of counterfeit currency at various convenience stores.  During his interview with U.S. Secret Service Agents, Outz stated that he had purchased $230 in counterfeit currency for $45

- 2 -

in genuine currency from another co-defendant, Lionel Rojas. Another co-defendant, Bart Welty, was arrested after passing two counterfeit $10 bills at a Dollar General Store in Greenville, South Carolina. Welty told Secret Service agents that he got the notes from his girlfriend, co-defendant Christy Jackson. According to an anonymous tip received by the Secret Service, Jackson had obtained the counterfeit currency from Rojas.

A search of Rojas' trailer revealed $65 in counterfeit currency and two handguns. After his arrest, Rojas told the agents that Robert Box, yet another co-defendant, who lived on Rojas' property, had a "four-inch stack" of counterfeit currency, in all denominations. Rojas also testified that Box had given counterfeit currency to Hopkins; in addition, Rojas stated that Hopkins had stolen $17,000 in counterfeit currency from Box. Box admitted after his arrest that he had made at least $40,000 in counterfeit currency and surrendered the color copier he used to make the notes.

Box testified that he first met Hopkins in May 2004 and that Hopkins arranged for a place to stay in exchange for counterfeit money. According to Box, he manufactured all denominations of counterfeit currency "from ones to one hundreds" and that he gave Hopkins "a thousand dollars or so" in counterfeit bills. Box also testified that Hopkins stole a box of counterfeit

currency he'd hidden under an air conditioning unit at a nearby motel.

Jackson testified that she had known Hopkins for about three years. According to Jackson, she took Hopkins to Rojas' house to get counterfeit money and he told her that he had counterfeit money in a motel room. Jackson also stated that she had pled guilty to conspiracy.

Nate King, an employee of the Plez-U convenience store testified that on June 14, 2004, Hopkins attempted to purchase $3 in gasoline with three one-dollar counterfeit bills. King stated that he informed Hopkins that the bills were fake and that Hopkins returned later and exchanged the bills with genuine currency.

The Government was allowed to "refresh" the recollection of one of its witnesses, Boyd Andrew White, regarding an interview with Special Agent Gilliam. White was asked to read portions of a written statement in which he claimed that he had seen Hopkins with counterfeit money and that Hopkins had bragged about it. However, White claimed he could not recall for certain that it was in fact Hopkins that he had seen with the money.

Hopkins testified and denied any knowledge of the counterfeit currency. On cross-examination, the prosecutor, after referring to each of Hopkins' co-defendants' statements to government agents, asked Hopkins, "Where's yours?" The prosecutor went on to ask Hopkins about his failure to provide a statement to

the investigators and, at one point, asked Hopkins if he was a "professional criminal." The court sustained Hopkins' objection.

Secret Service Agent David Thomas testified that the government had collected approximately $20,000 in counterfeit currency that was manufactured by Box.

At sentencing, the district court held Hopkins accountable for $40,000 of counterfeit currency, resulting in a six-level increase in Hopkins' base offense level of nine. See U.S. Sentencing Guidelines Manual (USSG) §§ 2B5.1, 2B1.1(b)(1)(D) (2004). After a two-level increase for obstruction of justice, USSG § 3C1.1, Hopkins' total offense level was 17; with a criminal history of category VI, the resulting guidelines range was 51 to 63 months imprisonment. The district court imposed a sentence of 60 months--the statutory maximum. Hopkins noted a timely appeal.

Counsel first addresses whether the district court erred in allowing Jackson to testify that she had pled guilty to the conspiracy charge. Hopkins did not object below and therefore this claim is reviewed only for plain error. See Fed. R. Crim. P. 52(b); United States v. Olano, 507 U.S. 725, 731-32 (1993). This court has held that the Government may introduce a witness' plea agreement "so that the jury may assess the credibility of the witnesses the government asks them to believe." United States v. Henderson, 717 F.2d 135, 137 (4th Cir. 1983) (internal quotations omitted). Jackson was asked about her plea only once at the

beginning of her testimony and no other reference was made to it at any other time in the trial.  Accordingly, there was no error in allowing Jackson to testify that she had pled guilty.

Next, counsel addresses whether the district court erred in allowing White to read from his prior statement given to Secret Service agents when he was unable to recall the details of that statement.  Because Hopkins did not object, this claim is reviewed only for plain error.  "It is settled in this circuit that the trial judge may allow questioning based on prior statements, whether inconsistent, impeaching, or for the purpose of authenticating past recorded recollection."  United States v. Hankish, 502 F.2d 71, 78 (4th Cir. 1974).  Therefore, we find no error in allowing White to read from his prior statement.

Third, counsel addresses whether the district court erred in  allowing the Government to question Hopkins, indirectly, about his failure to give a statement to investigators.  Again, because he did not object, this claim is reviewed for plain error.

The government may not comment on a defendant's exercise of his Fifth Amendment rights.  See Doyle v. Ohio, 426 U.S. 610, 618 (1976).  However, Doyle prohibits the use of a defendant's silence against him at trial where the government implicitly or explicitly advised the defendant upon arrest that he should keep silent.  Id. at 619.

- 6 -

In evaluating <u>Doyle</u>-type claims, the focus is on whether the government made any assurances to the defendant, either explicit or implicit, that his silence would not be used against him.  See <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 628 (1993).  Absent such assurances, there is no due process violation in using the defendant's silence to impeach his testimony at trial.  <u>United States v. Quinn</u>, 359 F.3d 666, 677 (4th Cir. 2004).  Here, there is no evidence that the government agents offered any assurances to Hopkins that his silence would not be used against him.  Accordingly, there was no error in allowing the prosecutor to question him regarding his failure to provide a statement to investigators.

Fourth, counsel questions whether the evidence was sufficient to support Hopkins' conviction.  In reviewing a sufficiency challenge, "[t]he verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it."  <u>Glasser v. United States</u>, 315 U.S. 60, 80 (1942). This court has defined "substantial evidence," in the context of a criminal action, as that evidence which "a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt."  <u>United States v. Burgos</u>, 94 F.3d 849, 862 (4th Cir. 1996).

Section § 371 provides, in pertinent part:

If two or more persons conspire either to commit any offense against the United States, or to defraud the

- 7 -

United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years or both.

We find that the evidence was sufficient to support the jury's finding that Hopkins conspired to defraud the United States by passing counterfeit currency. See United States v. Tanner, 483 U.S. 107, 129 (1987) (noting that "the broad language of § 371, covering conspiracies to defraud 'in any manner for any purpose,' puts no limits based on the method used to defraud the United States").

Finally, counsel questions whether the district court erred in attributing over $40,000 in counterfeit currency to Hopkins. Counsel asserts that Box testified that he made and hid $1700 which Hopkins found and kept but that, at sentencing, Secret Service Agent Gilliam erroneously testified that the amount was $17,000.

At Hopkins' sentencing hearing, Agent Gilliam testified that Box claimed to have made a total of approximately $40,000 in counterfeit currency. Of that amount, the government had recovered $25,546. In addition, Gilliam stated that Rojas had provided a written statement that Hopkins had stolen $17,000 in counterfeit currency from Box. Hopkins objected to this amount being attributed to him, citing Box's testimony that the amount was $1700. The district court overruled the objection, concluding that

Hopkins "knew the source of the counterfeit money and at one point he had at least in his possession over seventeen thousand of the approximately forty thousand that was manufactured. . . . So he is charged with the reasonably foreseeable acts and the omissions of others of the jointly undertaken criminal activity, because there was a reasonable foreseeability that [Hopkins] knew there was at least more than thirty thousand dollars in counterfeit money." We find that the district court's factual finding was not clearly erroneous. See United States v. Hughes, 401 F.3d 540 (4th Cir. 2005).

In accordance with Anders, we have reviewed the record in this case and have found no meritorious issues for appeal. We therefore affirm Hopkins' conviction and sentence. Counsel has moved to withdraw from further representation. We deny the motion at this juncture. This court requires that counsel inform Hopkins, in writing, of the right to petition the Supreme Court of the United States for further review. If Hopkins requests that a petition be filed, but counsel believes that such a petition would be frivolous, counsel may then move in this court for leave to withdraw from representation. Counsel's motion must state that a copy thereof was served on Hopkins.

We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

AFFIRMED