OPINION
{¶ 1} This is an appeal by defendant-appellant, Robert Harris ("appellant"), from a judgment of the Franklin County Court of Common Pleas, following a jury trial in which appellant was found guilty of one count of aggravated burglary and two counts of robbery.
 {¶ 2} On February 15, 2006, appellant was indicted on one count of aggravated burglary, in violation of R.C. 2911.11, one count of robbery, in violation of R.C. 2911.02(A)(2), and one count of robbery, in violation of R.C. 2911.02(A)(3). The *Page 2 
indictment against appellant arose out of the home invasion of Norma Peaden ("Mrs. Peaden") on February 6, 2006. At the time of the incident, Mrs. Peaden was 79 years old, and lived alone.
 {¶ 3} The matter came for trial before a jury beginning November 28, 2006, and the following relevant facts were adduced. Mrs. Peaden testified that at approximately 6:00 a.m. on February 6, 2006, she was sitting in her living room, drinking her morning coffee, and reading the newspaper, when she heard someone pounding on her front door. Thinking that someone could be in trouble, she went to the door. Mrs. Peaden peered out thru the venetian blinds, and found a black male, wearing dark pants and a dark hooded sweatshirt, looking back at her. She quickly surmised that he was not in trouble, and became "scared," so frightened she was "about ready to lose it." (Tr. at 24, 42.) Mrs. Peaden closed the blinds, hoping he would go away, but he continued to bang on the door. She checked the lock to make sure the door was secured, but, due to her state of mind, Mrs. Peaden inadvertently turned the lock the wrong way, and, instead, unlocked the door. At that point, the individual on her porch "kicked the door in," "push[ing] her back," and rushed into her home. Id. at 24. Mrs. Peaden ran outside and screamed for assistance, but no one responded. Panicked, she ran back inside her home, where she found the intruder in her living room. She saw him pick up her cigarette case and purse, after which, he fled from her home. Mrs. Peaden called 911 and reported the incident.
 {¶ 4} Sergeant Michael Robinson, a 31-year veteran with the Columbus Police Department, was on patrol that morning. He was traveling southbound on South Fourth Street, and as he was approaching Southwood Avenue, he observed a van, traveling *Page 3 
westbound on Southwood at a high rate of speed with no headlights on, run through a stop sign on South Fourth Street. Sergeant Robinson testified that he activated his pursuit lights, signaling the driver to pull over. Rather than pull over immediately, the driver continued for another three blocks. Sergeant Robinson requested assistance, and several other patrol cars responded. Eventually, the police were able to stop the vehicle. Sergeant Robinson approached, and asked the driver for his license and registration.
 {¶ 5} At that time, Sergeant Robinson heard over the police radio that a robbery had just occurred on Southwood Avenue, and the driver of the vehicle fit the description of the robbery suspect that was aired. Sergeant Robinson radioed back that he "probably had the suspect." Id. at 51. Sergeant Robinson went back to where the driver was stopped, studied him more carefully, and then placed the driver in the back of a cruiser. A search of the vehicle yielded a black hooded sweatshirt, a change purse, and a cigarette case.
 {¶ 6} While this was taking place, Officer Kerry Kaiser, a 13-year veteran with the Columbus Police Department, testified that he and his partner, Officer Joe Townsend, had been dispatched to Mrs. Peaden's home to investigate her report of a home invasion. Upon being informed that an individual matching the description of Mrs. Peaden's assailant was being detained, Officer Kaiser and his partner transported Mrs. Peaden to the scene of the traffic stop where she identified the driver as the intruder. Mrs. Peaden also identified the items found in appellant's vehicle as those taken from her home.
 {¶ 7} At trial, appellant denied having committed the alleged offenses. He testified that he arrived at work before 6:00 a.m., but, unsure as to whether he had reset the alarm for his wife, he called her on her cell phone to wake her up but she did not *Page 4 
answer. Fearing she would oversleep, appellant testified that he drove back home. At approximately 6:45 a.m., appellant left his house to return to work. While en route, he was flagged down by an individual named "Markese," who used to sell appellant drugs. Appellant testified that when he stopped his vehicle, Markese got in and told appellant that he had just "hit a lick," which is slang for having robbed someone. When appellant refused to drop Markese off where he wanted to go, Markese got out of the vehicle, and, according to appellant, left behind a change purse, cigarette case, and a dark hooded sweatshirt. Appellant admitted that he had a told a different version of events while at the police station. He also admitted that he was currently on parole for aggravated burglary, and had been previously convicted of obstruction with official business and failure to comply with an officer.
 {¶ 8} Following deliberations, the jury returned verdicts finding appellant guilty of one count of aggravated burglary and two counts of robbery. By entry filed January 26, 2007, the trial court sentenced appellant to eight years of imprisonment for his conviction for aggravated robbery, and merged the two robbery counts, for which appellant was sentenced to five years of imprisonment, to be served consecutively.
 {¶ 9} On appeal, appellant sets forth the following two assignments of error for our review:
 [1] HARRIS' SECOND-DEGREE FELONY ROBBERY CONVICTION WAS BASED ON INSUFFICIENT EVIDENCE.
 [2] THE TRIAL COURT ERRED BY IMPOSING MAXIMUM, CONSECUTIVE PRISON TERMS OF IMPRISONMENT.
 {¶ 10} By his first assignment of error, appellant argues that the evidence was insufficient to support his conviction for robbery. When reviewing the sufficiency of the *Page 5 
evidence, an appellate court examines the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. State v.Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id., citing Jackson v. Virginia (1979), 443 U.S. 307,99 S.Ct. 2781.
 {¶ 11} R.C. 2911.02 sets forth the offense of robbery, and states in relevant part as follows:
 (A) No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall do any of the following:
 * * *
 (2) Inflict, attempt to inflict, or threaten to inflict physical harm on another; * * *
R.C. 2901.01(A)(3) defines "`physical harm to persons'" to mean "any injury, illness, or other physiological impairment, regardless of its gravity or duration."
 {¶ 12} Appellant's primary contention is that that there was insufficient evidence to establish, pursuant to R.C. 2911.02(A)(2), that he attempted to inflict, or threatened to inflict, physical harm on another. Appellant raised this argument at the close of the state's case-in-chief, by way of a motion for acquittal, pursuant to Crim.R. 29. The trial court denied the motion, finding there was sufficient evidence presented by the state "on each and every element [to] sustain a conviction." (Tr. at 145.) *Page 6 
 {¶ 13} In the present case, the state presented evidence showing that appellant pounded on Mrs. Peaden's front door in the early morning, while it was still dark outside. Mrs. Peaden testified that when she saw the individual pounding at her door, she became "scared," and described herself as "about to lose it." Id. 23, 43. Her state of mind was so affected that she, inadvertently, unlocked her front door. When appellant kicked her door in, Mrs. Peaden testified that she was pushed backwards by the force.
 {¶ 14} With respect to the element of physical harm, this court has previously held that the threat of physical harm need not be explicit; rather, an implied threat of physical harm is sufficient to support a conviction under R.C. 2911.02(A)(2). State v. Exum, Franklin App. No. 05AP-894, 2007-Ohio-2648, at ¶ 31, citing State v. Ellis, Franklin App. No. 05AP-800, 2006-Ohio-4231, at ¶ 7. Additionally, this court held inColumbus v. Lipsey (Mar. 12, 1991), Franklin App. Nos. 90AP-543, 90AP-544, that the physical harm element of an assault charge was demonstrated when a defendant's blow to an officer's chest caused the officer to stumble backwards one or two steps, and we find our determination in Lipsey to be applicable here.
 {¶ 15} In the present case, although the physical harm inflicted upon Mrs. Peaden was somewhat slight, we find it is sufficient to satisfy the requirement of the statute. Construing the evidence most strongly in favor of the state, the trier of fact could have reasonably found that appellant's actions, which involved an early morning home invasion of an elderly woman by a complete stranger dressed in dark clothing, who pounded at her front door and subsequently kicked it in, pushing her backwards, conveyed a threat to Mrs. Peaden if she offered resistance. Upon review of the evidence presented, the issue of whether appellant's actions constituted physical harm was a *Page 7 
question for the jury, and we conclude the evidence was sufficient for the jury to return a verdict of second-degree robbery. Accordingly, appellant's first assignment of error is overruled.
 {¶ 16} In his second assignment of error, appellant contends that the trial court erred by sentencing him to maximum and consecutive prison sentences. Specifically, appellant asserts the retroactive application of State v. Foster, 109 Ohio St.3d 1, 2006-Ohio-856, certiorari denied by (2006), 127 S.Ct. 442, to his sentence violates the Due Process and Ex Post Facto Clauses of the United States Constitution. Therefore, appellant requests that this court remand this matter to the trial court so that appellant can be sentenced to statutory non-maximum and concurrent terms.
 {¶ 17} In Foster, the Supreme Court of Ohio held that, under the United States Supreme Court's decisions in Apprendi v. New Jersey
(2000), 530 U.S. 466, 120 S.Ct. 2348, and Blakely v. Washington (2004),542 U.S. 296, 124 S.Ct. 2531, portions of Ohio's statutory sentencing scheme were unconstitutional. Specifically, the Supreme Court of Ohio found that R.C. 2929.14(B), which required that express judicial findings be made on the record to overcome a presumption in favor of minimum and concurrent terms, was violative of a criminal defendant's right to have all elements of his offense tried to and passed upon by a jury.
 {¶ 18} Appellant argues that the remedy adopted by the Supreme Court of Ohio in Foster, that is, severance of the unconstitutional portions of R.C. 2929.14(B), operates as an ex post facto law because it inflicts greater punishment upon him than he would have facedpre-Foster, when the presumption of a minimum sentence would have applied. In addition, appellant argues that the Supreme Court should only have severed the *Page 8 
mandatory judicial fact-finding aspects of R.C. 2929.14, and left the presumption of a minimum sentence in place.
 {¶ 19} Neither argument is well-taken. We are bound to apply the precedent set by this state's highest court in Foster as it is written, and this court has repeatedly reaffirmed as much. State v. Fout, Franklin App. No. 06AP-664, 2007-Ohio-619; State v. Alexander, Franklin App. No. 06AP-501, 2006-Ohio-6375; State v. Gibson, Franklin App. No. 06AP-509, 2006-Ohio-6899. "Appellant may not, therefore, argue before this court that we must reshape the expressly-stated statutory severance remedy defined by the Supreme Court of Ohio in Foster, either with respect to maintenance of a presumption of minimum sentence or precluding retroactive application of the judicially modified sentencing statement." State v. Kendall, Franklin App. No. 06AP-1139,2007-Ohio-5656, at ¶ 13.
 {¶ 20} Accordingly, appellant's second assignment of error is overruled and the judgment of the Franklin County Court of Common Pleas is affirmed.
Judgment affirmed.
 FRENCH and WHITESIDE, JJ., concur.
WHITESIDE, J., retired of the Tenth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution. *Page 1